# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL W. WILLIAMS, | No. 50079-5-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Michael W. Williams appeals the superior court's dismissal of his Public Records Act (PRA) claim. Williams argues that the superior court improperly dismissed his claim because the Department of Corrections (the DOC) violated the PRA by providing an unreasonable estimated response time for his records request, unduly delaying production, failing to provide a sufficient brief explanation for its claimed exemptions, and redacting portions of the requested records that were not subject to the claimed exemptions. Williams also requests daily penalties and costs for the violations.

We hold that the DOC provided a reasonable estimated response time, did not unduly delay production, and provided a sufficient brief explanation for its claimed exemptions. But we also hold that the DOC improperly redacted portions of the requested records that were not subject to the claimed exemptions. Accordingly, we reverse the superior court's dismissal of Williams's PRA claim and remand to the superior court to order the disclosure of the improper redactions. Also on remand, the superior court will determine whether the DOC's redactions were done in bad

faith; if so, the appropriate penalty; and costs incurred by Williams in litigating this matter in the superior court.

FACTS

In March 2016, Williams submitted a PRA request to the DOC for "the contract that the DOC ha[d] entered into with J-Pay covering the period of 2014-2015." Clerk's Papers (CP) at 26. The DOC received the request on March 15, and within five business days, on March 22, a DOC public disclosure specialist sent a letter to Williams stating that the request would be responded to within "33 business days, *on or before* May 6, 2016." CP at 27. This response time was based on the size and scope of the request, the disclosure specialist's additional workload, and other scheduling issues such as unexpected staff absences. Also on March 22, the disclosure specialist sent Williams's request to the contracts department, which provided the requested documents to the disclosure specialist later that same day.

From March 22 to May 6, the disclosure specialist received 60 new public records disclosure requests. The disclosure specialist was responsible for responding to these new requests in addition to her other assigned responsibilities.

On May 4, after making redactions to the requested records, the disclosure specialist had her supervisor review the records responsive to Williams's request. On May 6, the disclosure specialist sent a letter to Williams informing him that the DOC had identified responsive records pursuant to his request and that a copy of the requested records would be provided upon receipt of his payment for the records.

Williams paid for his copies of the requested records on May 19. On May 25, the DOC sent Williams a copy of the requested records, a denial form and exemption log, and an appeal

form. The records contained several redactions that were numbered to correspond with exemptions listed in an exemption log. The exemption log stated:

**20-SECURITY INFORMATION** — These records contain specific security information and protocols, the disclosure of which may compromise the safety and/or security of people and/or a facility, and have been redacted or withheld in their entirety per the following citations:

RCW 42.56.240(1) — "Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."

RCW 42.56.420(2) — "Those portions containing specific and unique vulnerability assessments or specific and unique emergency and escape response plans at a city, county, or state adult or juvenile correctional facility, the public disclosure of which would have a substantial likelihood of threatening the security of a city, county, or state adult or juvenile correctional facility or any individual's safety."

**27-OTHER** — These records contain proprietary information and are withheld in their entirety per the following citation(s):

RCW 42.56.270 (11) Proprietary data, trade secrets, or other information that relates to: (a) A vendor's unique methods of conducting business; (b) data unique to the product or services of the vendor.

CP at 31.

The J-Pay contract included two appendices, Appendix 2.01 and Appendix 2.01.1, that described the services J-Pay would provide to the DOC. Appendix 2.01 and Appendix 2.01.1 were identical. The seventh bullet point of Appendix 2.01(1), which pertained to everyday tasks that offenders could perform with the kiosk applications, was redacted with a reference to exemption 20. An identical section in Appendix 2.01.1(1) was not redacted and read, "Keyword search function may be edited at any time." CP at 64. The DOC later claimed that this redaction "protect[ed] language discussing how incoming e-mails are searched and screened." CP at 101.

After receiving the records, Williams filed a PRA suit against the DOC claiming it violated his rights under the PRA. Williams argued that the DOC violated his rights by failing to provide a reasonable estimated response time, unduly delaying production of the requested records, failing to provide a sufficient brief explanation for its claimed exemptions, and improperly redacting the records produced. After a show cause hearing to determine whether the DOC violated the PRA, the superior court dismissed Williams's suit.

Williams appeals.

## ANALYSIS

A.    STANDARD OF REVIEW

We review agency actions challenged under the Public Records Act (PRA) de novo. *Hikel v. City of Lynnwood*, 197 Wn. App. 366, 371-72, 389 P.3d 677 (2016). We also review a superior court's dismissal of a PRA action de novo. *Johnson v. Dep't of Corr.*, 164 Wn. App. 769, 775, 265 P.3d 216 (2011), *review denied*, 173 Wn.2d 1032 (2012). We may affirm the superior court on any ground supported by the record. *Id*. at 779.

B.    TIMING OF PRODUCTION

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC provided an unreasonable estimated response time and used such estimate to unduly delay production of the requested records.[1] We disagree.

---

[1] Williams also assigns error to the superior court not granting him declaratory and injunctive relief. However, Williams fails to provide any argument or citation to legal authority for this assignment of error. Therefore, we decline to address this claim. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

> 1.      Unreasonable Estimated Response Time for Production

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC violated the PRA by providing an unreasonable estimated response time for his request. We disagree.

Under the PRA, an agency must provide "the fullest assistance to inquirers and the most timely possible action on requests for information." RCW 42.56.100. The PRA provides a cause of action "when an agency has not made a reasonable estimate of the time required to respond to the request." *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 651, 334 P.3d 94 (2014), *review denied*, 182 Wn.2d 1011 (2015). The operative term is "reasonable." *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 864, 288 P.3d 384 (2012), *review denied*, 177 Wn.2d 1002 (2013). The reasonableness of an estimated response time may depend on the number of records requested, and the difficulty in gathering and reviewing the requested records. *See Ockerman v. King County Dep't of Developmental & Envtl. Servs.*, 102 Wn. App. 212, 218, 6 P.3d 1214 (2000).

Here, the DOC's 33-day estimated response time was reasonable. The record shows that the disclosure specialist had to forward the request to another department in order to locate the requested documents, had to review and redact the records upon receipt of the documents, and had to have her supervisor review the redacted response to the disclosure request before production to Williams. These tasks were in addition to the disclosure specialist's existing workload and the other public records requests for which she was responsible. Given these circumstances, the 33-day estimated response time was reasonable. Therefore, we hold that this challenge fails.

2.      Undue Delay of Production

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC violated the PRA by using its estimated response time to unduly delay its response to his request.  We disagree.

The purpose of the PRA is "for agencies to respond with reasonable thoroughness and diligence to public records requests."  *Andrews*, 183 Wn. App. at 653.  "While agencies may provide a reasonable estimate of when they can produce the requested records . . . they cannot use that estimated date as an excuse to withhold records that are no longer exempt from disclosure." *Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus.*, 185 Wn.2d 270, 289, 372 P.3d 97 (2016).

Williams cites to *Wade's* in support of his claim.  However, *Wade's* fails to support Williams's claim.

In *Wade's*, a newspaper brought an action against an agency for withholding nonexempt records in violation of the PRA.  *Id*. at 275.  The newspaper requested records pertaining to investigations by the agency.  *Id.* at 276.  The agency explained in its initial response letter that "it did not believe it would be able to produce the requested records until the investigations closed, likely by August 9, 2013."  *Id.* at 289.  The investigations had been completely concluded by June 2013.  *Id*.  On appeal, the State Supreme Court held that the agency violated the PRA because it continued to improperly withhold records.  *Id*.  The court concluded that the agency could not use the "estimated date as an excuse to withhold records that [were] no longer exempt from disclosure." *Id*.  The court reasoned that because the investigations concluded before the estimated date, the agency should have begun to release records before that date.  *Id.* at 289-90.

6

In contrast to *Wade's*, the DOC did not use the estimated response date to improperly withhold records. Unlike in *Wade's*, there is no evidence that the DOC's estimated response time was an attempt to withhold documents or to delay disclosure of the requested documents. Rather, the estimated response time was based on the size and scope of the request, workload, and other scheduling issues.

Williams argues that the disclosure specialist sat on the requested records until the end of the estimated response time because she received the requested records the same day she made a request for them from the contracts department. However, the record shows that the disclosure specialist had other workload responsibilities in addition to responding to 60 new records requests during the time she received the requested records from the contracts department. Also, the disclosure specialist attended to Williams's request and produced the requested records by the estimated response date. Under the circumstance, we hold that the DOC did not unduly delay production of the requested records.

C.    RECORDS PRODUCED

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC violated the PRA by (1) failing to provide a sufficient brief explanation for its claimed exemptions and (2) improperly relying on such exemptions to redact a section of Appendix 2.01. We agree in part.

We start from the presumption that an agency has an affirmative duty to disclose records. *Doe ex rel. Roe v. Wash. State Patrol,* 185 Wn.2d 363, 371, 374 P.3d 63 (2016). Despite the PRA's presumption, the legislature has deemed certain public records exempt from production. *Id.* The agency claiming an exemption "bears the burden of proving that the documents requested

fall within the scope of the exemption." *Cowles Publ'g Co. v. Spokane Police Dep't*, 139 Wn.2d 472, 476, 987 P.2d 620 (1999). The PRA directs that it be "liberally construed and its exemptions narrowly construed." RCW 42.56.030.

1.    Brief Explanation

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC violated the PRA by failing to provide a sufficient brief explanation for its claimed exemptions. We disagree.

Under the PRA, "Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). "The purpose of the requirement is to inform the requester why the documents are being withheld and provide for meaningful judicial review of agency action." *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014).

In claiming an exemption, the agency "must provide sufficient explanatory information for requestors to determine whether the exemptions are properly invoked." *Id.* at 95. And the agency must explain how the exemption applies to the information. *Block v. City of Gold Bar*, 189 Wn. App. 262, 282, 355 P.3d 266 (2015), *review denied*, 184 Wn.2d 1037 (2016).

Here, the DOC provided a sufficient brief explanation. The records here contained redactions with references to numbered exemptions in an exemption log. These numbered exemptions contained a brief explanation that explained how the exemption applied to the redacted information. For example, exemption 20, labeled "Security Information," included an explanation that the corresponding redactions "contain[ed] specific security information and protocols, the

disclosure of which may compromise the safety and/or security of people and/or a facility, and have been redacted or withheld in their entirety per" RCW 42.56.240(1) and RCW 42.56.420(2). CP at 31. Also, exemption 27, labeled "Other," included an explanation that the corresponding redactions "contain[ed] proprietary information and [were] withheld in their entirety per" RCW 42.56.270(1).[2] CP at 31.

Williams also argues that the DOC failed to explain how the exemptions applied and that the DOC's later explanation that the redaction "protect[ed] language discussing how incoming e-mails are searched and screened," CP at 101, showed what type of explanation was required. Williams's arguments are not persuasive.

Here, the DOC's explanations stated that the redacted information was exempt because it included security or proprietary information and provided citations to and the text of the statutes relied upon. These brief explanations contained enough information for the "requestors to determine whether the exemptions are properly invoked." *Block*, 189 Wn. App. at 283. Also, Williams fails to provide any legal authority for his argument that the supervisor's further explanations showed that the DOC's original explanations were insufficient. Therefore, we hold that the DOC provided a sufficient brief explanation.

---

[2] *See e.g., Block*, 189 Wn. App. at 286 (holding that an agency's brief explanations of "content is attorney advice to client" and "content is requesting attorney advice" were sufficient).

2.      Redacted Records

Williams argues that the superior court erred when it dismissed his PRA claim because the DOC improperly relied on its claimed exemptions to redact a single line in Appendix 2.01.[3]  We agree.

"The PRA requires each relevant agency to facilitate the full disclosure of public records to interested parties."  *Resident Action Council v. Seattle Hous. Auth*., 177 Wn.2d 417, 431, 327 P.3d 600 (2013).  The PRA also contains "numerous exemptions that protect certain information or records from disclosure, and the PRA also incorporates any 'other statute' that prohibits disclosure of information or records."  *Id.* at 432.  These exemptions are narrowly construed.  *Doe ex rel. Roe*, 185 Wn.2d at 371.

a.      RCW 42.56.240(1)

Under RCW 42.56.240(1), specific intelligence information and specific investigative records may be exempt from production.  To qualify for this exemption, the information must be (1) intelligence or investigative in nature, (2) compiled by a law enforcement, penology, or investigative agency, and (3) essential to law enforcement or the protection of privacy.  RCW 42.56.240(1); *Wade's*, 185 Wn.2d at 281.

Here, the DOC redacted the seventh bullet point in Appendix 2.01(1) by relying on RCW 42.56.240(1).  This point was under a section listing everyday tasks that offenders could perform with the kiosk applications.  The point read, "Keyword search function may be edited at any time."

---

[3] Williams also argues that inconsistent redaction of the identical provisions constitutes a per se violation of the PRA.  However, Williams fails to provide any legal citation or authority for support as required by RAP 10.3(a)(6).  Therefore, we decline to address this claim.  RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809.

*See* CP at 56, 64. The ability of an offender to edit a keyword search function in the kiosk at any time is not intelligence or investigative in nature nor essential to law enforcement or the protection of privacy. RCW 42.56.240(1); *Wade's*, 185 Wn.2d at 281.

The DOC argues that the redaction was proper because it contained security information that was exempt from production. The DOC notes that the supervisor later stated that the redaction "protect[ed] language discussing how incoming e-mails are searched and screened." CP at 101. However, the context of the information, and more importantly, the actual information itself, proves otherwise. The section in which the redacted information is found clearly discusses what tasks an offender could perform with the kiosk. Furthermore, the supervisor's later explanation does not show that the information meets the elements required to qualify for the intelligence or investigative exemption under RCW 42.56.240(1). Although the method of searching and screening emails may be essential to law enforcement, such information was not shown to be compiled by a law enforcement, penology, or investigative agency, or to be intelligence or investigative in nature. RCW 42.56.240(1); *Wade's*, 185 Wn.2d at 281. Therefore, we hold that the DOC improperly redacted the seventh bullet point in Appendix 2.01 by relying on RCW 42.56.240(1).

          b.      RCW 42.56.420(2)

Under RCW 42.56.420(2), certain security information may be exempt from production. To qualify for this exemption, the information must (1) contain specific and unique vulnerability assessments or specific and unique emergency and escape response plans, (2) at a city, county, or state adult or juvenile correctional facility, (3) the public disclosure of which would have a

substantial likelihood of threatening the security of a city, county, or state adult or juvenile correctional facility, or any individual's safety. RCW 42.56.420(2).

Here, the DOC also redacted the seventh bullet point in Appendix 2.01(1) by relying on RCW 42.56.420(2). As discussed in the preceding section, the point pertained to the tasks an offender could perform with the kiosks and the ability of an offender to edit a keyword search function at any time. Specifically, the point read, "Keyword search function may be edited at any time." *See* CP at 56, 64. The ability of an offender to edit a keyword search function in the kiosk at any time is not a vulnerability assessment or emergency and escape response plan. RCW 42.56.420(2).

Once again, the DOC argues that the redaction was proper as exempt security information and notes the supervisor later stated that the redaction "protect[ed] language discussing how incoming e-mails are searched and screened." CP at 101. But, as discussed above, the context of the information and the actual information itself proves otherwise. Moreover, the method of searching and screening incoming e-mails of offenders fails to meet the elements of the exemption under RCW 42.56.420(2), which requires the information to contain vulnerability assessments or specific unique emergency and escape response plans.[4]

Therefore, we hold that the DOC improperly redacted the portion of the requested records discussed above. Thus, the superior court erred when it dismissed Williams's PRA claim.

---

[4] The DOC argues that Williams's position below only involved the redaction of common words such as "a" and "the." However, from a review of the record, it is apparent that this is not the case.

D.    DAILY PENALTIES

Williams argues that he is entitled to daily penalties as a result of the DOC's PRA violation. We remand to the superior court to determine whether the DOC's redactions were done in bad faith, and if so, the appropriate penalty to impose.

Under RCW 42.56.550(4), "it shall be within the discretion of the court to award [any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record] an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." However, "A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record." RCW 42.56.565(1).

Under the PRA, "bad faith incorporates a higher level of culpability than simple or casual negligence." *Faulkner v. Dep't of Corr.*, 183 Wn. App. 93, 103, 332 P.3d 1136 (2014), *review denied*, 182 Wn.2d 1004 (2015). To establish bad faith, "an inmate must demonstrate a wanton or willful act or omission by the agency." *Id.* "Wanton" means "'[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences.'" *Id.* (citing BLACK'S LAW DICTIONARY 1719-20 (9th ed. 2009)). A person acting wantonly may be creating no greater risk of harm, but is not trying to avoid the risk of harm, and is indifferent to whether harm results or not. *Id.* at 104.

Here, because the determination of bad faith necessitates fact finding, we remand to the superior court for such determination. *See Dep't of Transp. v. Mendoza de Sugiyama*, 182 Wn.

App. 588, 606, 330 P.3d 209 (2014). On remand, the trial court should determine whether the DOC's redactions were done in bad faith, and if so, the appropriate penalty to impose.

COSTS

Williams argues that he is entitled to an award of all costs as the prevailing party. We agree.

The PRA provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record . . . shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongfully withheld records or portions thereof. *Gronquist v. Dep't of Licensing*, 175 Wn. App. 729, 756, 309 P.3d 538 (2013).

Here, because the DOC's claimed exemption did not apply to the redaction it made in Appendix 2.01, the DOC wrongfully withheld that portion of the records. As a result, Williams prevails against the DOC in this action. Therefore, we hold that Williams is entitled to an award of all costs incurred in litigating this claim, but because Williams is self-represented, he is not entitled to an award of attorney fees. *See e.g.*, *Francis v. Dep't of Corr.*, 178 Wn. App. 42, 68, 313 P.3d 457 (2013), *review denied*, 180 Wn.2d 1016 (2014).

A commissioner of this court shall determine the amount of appellate costs under RAP 14.2 upon Williams's filing of a cost bill. The amount of costs incurred in litigating this matter below shall be determined by the superior court on remand.

CONCLUSION

We reverse the superior court's dismissal of Williams's PRA claim and remand to the superior court to order the disclosure of the improper redactions. Also on remand, the superior court will determine whether the DOC's redactions were done in bad faith; if so, the appropriate penalty; and costs incurred by Williams in litigating this matter in the superior court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Melnick, J.