# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEREMY CONKLIN, DO,<br>an individual,<br>　　　　　　　　　Appellant,<br><br>　　　v.<br><br>UNIVERSITY OF WASHINGTON<br>SCHOOL OF MEDICINE, a Washington<br>public educational institution;<br>UNIVERSITY OF WASHINGTON<br>MEDICINE, a Washington public health<br>system; and UNIVERSITY OF<br>WASHINGTON MEDICAL CENTER, a<br>Washington public hospital,<br><br>　　　　　　　　　Respondents. | No. 83200-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Dr. Jeremy Conklin, personally and through his attorneys, made four separate Public Records Act (PRA) requests to the University of Washington (UW) mostly related to its surgical fellowship program. Conklin contends that UW violated the PRA by providing unreasonable response estimates, delaying release of records, and conducting an inadequate search to provide responsive records. Because UW did not conduct an adequate search and did not provide some responsive documents until after UW considered the request closed, we reverse the trial court's denial of claims related to that request and award attorney fees. We remand for the trial court to determine the amount

Citations and pin cites are based on the Westlaw online version of the cited material

of attorney fees and costs on appeal and below, and to proceed with the penalty phase of trial as well as reconsider Conklin's request for an in camera review. We otherwise affirm the trial court in denying Conklin's remaining PRA claims.

FACTS

Conklin is an osteopathic surgeon with a doctor of osteopathic medicine degree. In 2017, he applied but was not accepted to the UW's congenital cardiac surgery fellowship program. UW School of Medicine (SoM) participates in a fellowship "match" system operated by the Congenital Cardiac Surgery Fellowship Committee of the Thoracic Surgery Directors Association (TSDA). Over a period of about two years, he and his attorneys submitted to UW four separate records requests as Conklin pursued claims against UW and others in federal court, including a claim under the PRA.

UW's Public Records Request Process

UW's Office of Public Records and Open Meetings (OPR) is the institutional office at UW that is responsible for managing responses to public records requests. In January 2021, OPR had nine employees who helped manage responses to PRA requests. OPR also worked with many UW employees in other departments to collect and review documents in response to public records requests. OPR does not prioritize, dedicate extra resources to, or otherwise give preferential treatment to a requester that sues UW.

UW receives a high volume of public records requests, and OPR manages responses while considering the essential functions of the university. In 2019, OPR received 932 PRA requests, and OPR staff reviewed approximately 3.2

million pages.  In 2020, OPR received 831 PRA requests, and OPR staff reviewed approximately 1.3 million pages.  As of January 1, 2021, OPR had 320 open requests and 1,424,924 pages in queue to be reviewed with many more documents in the process of being gathered and transferred to OPR by divisions and colleges throughout UW.

To gather responsive documents, OPR identifies the colleges, schools, and divisions at UW that potentially have responsive records, notifies a point of contact, and asks for feedback on how long it will take to gather responsive documents.  There are approximately 50 colleges, schools, and divisions at UW that OPR manages.  OPR takes the feedback it receives from colleges, schools, and divisions with potentially responsive records on the time needed to gather those records and provides estimates to requesters on the length of time it will take to further respond to their requests.  The colleges, schools, and divisions gather documents responsive to public records requests and submit them to OPR to review for any applicable exemptions.

OPR then reviews the records and determines whether the record is wholly releasable or partially exempt from release, in which case redactions are applied to portions of the record and marked with codes referencing the specific applicable exemption.  If OPR decides the record is wholly exempt, OPR creates a log of those documents.

When OPR completes its review, it releases responsive records to the requester, including those that are partially releasable along with a cover letter explaining any exemptions applied, and, if applicable, a log of wholly exempt

records.  For requests for records that take a long time to respond to completely and/or include a large volume of records, OPR will make interim releases of records to requesters on a rolling basis as the review of records is completed.

If a request for public records seeks multiple categories of documents, OPR still refers to it as a single request and processes the review and release of records from that request collectively, closing the request only when responding to all components is complete.  If OPR receives multiple separate requests submitted by the same requester at different times, OPR processes the requests in the order received, prioritizing its review of records responsive to the earliest request before moving to the subsequent requests.  OPR considers the requester the individual who made the public records request even if they may be making the request on behalf of someone else.

<u>The Public Records Requests</u>

*A.  First Request: PR-2017-00920*

On November 16, 2017, Conklin's attorney at the time, Kristi Favard, requested the following records from UW, which identified this request as PR-2017-00920 (PR-920):

> - all agreements between UW Medical Center and the Thoracic Surgery Director's Association and/or American Board of Thoracic Surgery;
>
> - all Medicare funding information, grants, agreements, etc. regarding UW Medical Center's Medicare grants for residencies and fellowships;
>
> - all documents regarding any osteopathic physician application (individual or in general) to any residency or fellowship at UW Medical Center for the past 10 years, including but not limited to applications, correspondence, inter office emails or memos, etc.;

- all documents regarding Dr. Jeremy Conklin's applications to the UW Medical [C]enter for residency/fellowship;

- all documents regarding RCW 70.41.235 from 1995 to present;

- all documents regarding osteopathic physicians as residents/fellows at UW Medical Center, including any lists of all residents and fellows and their professional titles (OD [v.] MD), selected over the past 10 years.

Tisa Escobar, a public records compliance officer at OPR, acknowledged receipt of the request that same day and estimated that UW would respond to the request by December 18. As of that day, OPR had 182 open requests and over 750,000 pages of records awaiting review. Escobar, who had worked in OPR since before the first request was submitted in 2017, described PR-920 as one of the broadest requests she had ever managed.

She then contacted UW Medicine, including SoM, to gather responsive records. On November 17, SoM received the request from OPR. On November 27, Courtney Ng, the records manager in the Dean's Office for SoM, sent initial notifications of the request to SoM's Graduate Medical Education Office (GME), the Department of Surgery, and SoM's Business Unit. Ng began to receive responsive records from SoM's Business Unit on November 30.

Generally, Ng or an assigned analyst assesses how long it will likely take to gather records by discussing with record holders the volume of records, technical assistance needed, as well as the schedules and functions of the personnel needed to locate and retrieve the records. Record holders in SoM often have responsibilities in education, patient care, research, and other critical functions. After receiving documents and before submitting to OPR, Ng or an

analyst reviews the records to confirm they are responsive and screens for potential exemptions such as unpublished research and protected patient information, which must be redacted prior to disclosure. Although OPR conducts its own review for exemptions, SoM's review "identifies potentially exempt material which OPR may otherwise be unable to identify as easily, e.g., because the exemptions are unique to the SoM or because identifying the exempt material requires consultation with SoM record holders."

On December 6, GME notified Ng that it had some responsive records, including partial fellowship files, but determined that fellowship applications were stored in a third-party system and potentially with departments that oversee the particular residency and fellowship programs. The office needed additional time to research how to access the records but provided her with an initial batch of responsive records. On December 13, GME alerted Ng that because there was no central records system she would need to individually reach out to different departments. That same day, Ng requested OPR extend its initial internal target production date from December 5 to February 15, 2018. On December 18, Escobar emailed Favard stating OPR found it necessary to extend UW's response date to April 27, 2018. On December 20, Favard emailed Escobar objecting to the extension, alleging that the estimated response time was unreasonable.

In January or February 2018, Escobar became aware Conklin filed a lawsuit against UW,[1] but stated she continued managing PR-920 in the same manner as she would any other request. When there were multiple open requests from the same requester, it was common for OPR to respond to the requests in the order received in order to balance the rights of all requesters. January 4, GME sent Ng a finalized list of departments and programs that matched parameters of PR-920. GME also provided all of its remaining responsive records to Ng on January 31, 2018.

On February 1, SoM reached out to 18 departments with an initial deadline for response set for February 8. Ng spent a majority of her time from February through April 2018 responding to these inquiries. On February 8, SoM sent OPR a first installment of 43 pages and one spreadsheet of application materials and communication records. OPR reported receiving the first installment from SoM on February 13 and began reviewing them and generating a log of exempt records.

The vast majority of the records from SoM were applications to residencies and fellowships sponsored by SoM, which UW believed to be exempt as public employment applications under RCW 42.56.250(2). Escobar described

---

[1] On January 22, 2018, Conklin filed a federal lawsuit against UW Medicine, UW Medicine/NW, University of Washington Medical Center, University of Washington School of Medicine, Paul Ramsey, M.D., Lester Permut, M.D., Seattle Children's Hospital, Children's University Medical Group, Mary Bridge Children's Foundation, American Board of Thoracic Surgery, Inc., Thoracic Surgery Directors Association, Inc., and Accreditation Council for Graduate Medical Education, alleging that the denial of his fellowship violated antitrust laws, and that UW violated the PRA. The court dismissed his antitrust case, and the dismissal was upheld on appeal by the Ninth Circuit. See Conklin v. Univ. of Wash. Med., 798 F. App'x 180 (9th Cir. 2020).

logging exemptions as a time-consuming process. Escobar reviewed "tens of thousands of pages" for this request, splitting her time between these requests and other requests.

On March 6, SoM sent follow up emails to departments that had not yet responded. On March 15, SoM provided a second installment of records to OPR containing 33,354 pages of responsive documents. SoM provided a third installment containing 14,000 pages of documents on April 11.

On April 12, Ng contacted OPR on the phone and asked for an extension until December 31, 2018 due to the high volume of records gathered and still waiting review. The volume of records collected as of April 2018 was 8.6 gigabytes. On April 27, Escobar emailed Favard extending the response date to a February 15, 2019 estimated completion date. OPR indicated it would be releasing documents on a rolling, or installment, basis. On April 30, SoM provided OPR with a fourth installment of records containing 372 pages of emails containing applicant data. SoM received the final submission of records from outstanding departments by the same day.

On July 5, SoM sent a fifth installment of 8,064 pages of application materials to OPR. On August 30, SoM provided a sixth installment of 24,095 pages of application materials.

On September 19, Escobar emailed Favard the first partial release of records and an interim exemption log that identified on a document-by-document basis the applicable exemptions for over 28,000 pages of documents. This was

307 days from when PR-920 was submitted and 223 days from when SoM sent to OPR the first installation of records.

On November 14, SoM provided a seventh installment of 1,005 pages of emails containing applicant data to OPR.

On January 2, 2019, SoM requested OPR extend its internal deadline to May 2, 2019. On February 15, Escobar emailed Favard extending UW's response date to December 2, 2019.

On May 2, SoM requested another extension of the internal OPR deadline from May 2 to December 31, 2019. On May 16, SoM released an eighth installment of 1,184 pages of resident and fellow personnel files to OPR. On July 3, SoM extended the internal OPR deadline to June 30, 2020.

On June 5, 2019, Conklin, through his attorney of record Aaron Orheim, refiled Conklin's PRA complaint in King County Superior Court.[2] On June 28, Escobar emailed Favard regarding transmitting a release of records. Because the records were too large to email, the release included information about coming in person to view the records, or in the alternative, an invoice for the cost of copies provided by CD. The release letter included a deadline by which to respond or make arrangements. Favard did not respond to this email or provide payment.

---

[2] Conklin requested the superior court (1) order UW "to show cause why they have refused to allow inspection and copying of the requested documents"; (2) order UW "to immediately produce the documents requested"; (3) conduct an in camera review of the documents which UW had redacted or claimed were exempt, and (4) award Conklin "the maximum statutory per diem damages," attorney's fees, costs, and interest.

On July 12, SoM sent a ninth installment of 1,114 pages of emails containing applicant data to OPR.

By August 13, OPR was aware that Conklin had changed counsel and had asked OPR to submit a new request for records previously requested by Favard. The new request was identified as PR-2019-00602 (PR-602) and is discussed below as the fourth request.

### B. Second Request: PR 2018-00342

On May 14, 2018, while PR-920 was still pending, Favard submitted a second public records request identified as PR 2018-00342 (PR-342). The request comprised of 18 categories of records including "[a]ny agreement between UW and Accreditation Council for Graduate Medical Education (ACGME) or any other organization that exclusively requires ACGME accredited training of residents and fellows for any reason."[3] On May 21, 2018, Escobar

---

[3] The other categories were:

2. All communications with third-parties (not employees of UW or the State of Washington) regarding the selection of osteopathic physicians for residencies and fellowships at UW School of Medicine and/or regarding RCW 70.41.235.

3. All documents regarding, referring, or relating to the single accreditation system for graduate medical education (GME) agreed upon by ACGME and the American Osteopathic Association (AOA).

4. All documents regarding, referring, or relating to excluding osteopathic physicians from any residency or fellowship at UW School of Medicine or discussing eligibility for GME that does not recognize American Osteopathic Association Board of Surgery (AOBS) accreditation and/or board certification.

5. All documents regarding osteopathic physician eligibility or selection for the congenital cardiothoracic surgery fellowship at UW School of Medicine, including any and all communications or complaints regarding osteopathic physicians not being considered or eligible for

the fellowship program and/or discussing AOA accreditation or board certification not being accepted for the fellowship.

6. All communications with the TSDA or ABTS regarding AOA/AOBS accreditation or board certification and the congenital cardiothoracic surgery fellowship.

7. Any and all documents comparing osteopathic physician training to allopathic physician training and/or osteopathic surgeons being less skilled or qualified than allopathic surgeons.

8. All documents, including evaluation, of technical skills of the fellow applicants and fellows selected for the congenital cardiothoracic surgery fellowship over the past five years.

9. All evaluations of recommendation letters for every applicant for the congenital cardiothoracic surgery fellowship over the past five years.

10. All rejection letters/emails to the congenital cardiothoracic surgery fellowship applicants over the past five years.

11. Any and all documents regarding the selection of/for residency and fellowship positions available at UW for Northwest University graduates, including but not limited to correspondence with Northwest University regarding the same over the past five years.

12. Any and all documents where UW has ever been accused of discrimination against osteopathic physicians or violations of RCW 70.41.235 in training residents and fellows.

13. Any and all employment files whereby any DO physician at UW has complained about being discriminated against and/or being treated in any way because of his or status as a DO.

14. Any and all documents regarding the congenital cardiothoracic surgery fellowship changing from one year to two over the past five years.

15. Any and all documents about, referring to or discussing Dr. Stanley Flemming.

16. All documents regarding, referring or relating to an applicant to an ACGME accredited fellowship program that did not satisfy the program's eligibility requirements but gained approval of the program director, fellowship selection committee, Graduate Medical Education Committee … via ACGME Eligibility Requirements effective 1 Jul 2016.

17. All communications between UW and other ACGME accredited

emailed Favard acknowledging receipt of the request, stating in part that OPR estimated completing its response to this PRA request by March 29, 2019. On November 8, 2018, Escobar emailed Favard regarding clarification of her request. On November 15, SoM sent a first batch of records for PR-342 to OPR.[4] On November 27, Favard emailed Escobar replying to the clarification of her request.[5] On March 29, 2019, Escobar emailed Favard extending UW's response to January 14, 2020. She stated that both PR-920 and PR-342 were estimated to involve reviewing over 105,000 pages. On April 12, 2019, SoM sent a second batch of records to OPR in response to PR-342. Then on January 14, 2020, Escobar emailed Favard regarding an extension to respond to the request.[6]

On November 16, 2020, Escobar emailed Orheim transmitting what she believed to be a final release of records for PR-342, stating that OPR considered

---

Congenital Cardiac Surgery Fellowship programs regarding exclusively selecting medical doctors, excluding osteopathic physicians, or only accepting ACGME accredited training or ABTS board certification, or about Dr. Jeremy Conklin or any other osteopathic physician, or osteopathic physicians in general.

18. All communications between UW and other ACGME accredited training programs regarding DO applicants as well as AOA accredited training.

[4] We note that the trial court twice incorrectly found that OPR released records to Conklin's attorney when the supporting record indicated that the records were submitted from SoM to OPR on August 16, 2016 as to PR-2018-00433 and on November 15, 2018 as to PR-2018-00342.
[5] The timing of the clarification and response came from the joint statement of stipulated facts to the trial court. The record does not provide any more information as to this clarification.
[6] The trial court, citing the joint statement of stipulated facts, found that UW on January 14, 2020, extended the response to "December 2, 2019" for PR-342; however, the stipulated facts did not provide such information. The content of this finding suggests a scrivener's error.

this request closed. The parties appear to agree that this November release included a copy of a fellowship match agreement between SoM and TSDA. According to Ng, this was a responsive record from GME to PR-342 asking for "[a]ny agreement between UW and Accreditation Council for Graduate Medical Education (ACGME) or any other organization that exclusively requires ACGME accredited training of residents and fellows for any reason."

*C. Third Request: PR 2018-00433*

On June 15, 2018, while PR-920 and PR-342 were pending, Conklin made his own PRA request identified as PR 2018-00433 (PR-433) to UW and the Office of the Attorney General seeking the following:

> [A]ll communications, internal and external, by and between UW's public records office, the WA state Attorney General, UW administration, including but not limited to the Board or Regents, Deans, President, Vice-President, and hospital/UW Med Administration, and attorneys, regarding or relating to [or] responding to any public records request submitted by or on behalf of Dr. Jeremy Conklin and/or referring or relating to responding to PRA Requests numbered 2018-00342 (Favard) and 2017-00920 (Favard).

(Alteration in original).

On June 22, 2018, Escobar emailed Conklin acknowledging receipt of his request and estimated a response would be provided by July 16, 2018. On July 16, Escobar emailed Conklin regarding an extension to respond to the request. On August 16, 2018, SoM provided its first batch of records to OPR.

On January 7, 2019, OPR made an interim release of 1,946 pages of records to Conklin. That same day, Escobar emailed Conklin regarding

extension to respond to request.  Escobar emailed Conklin on April 3 regarding extension to respond to request.

On June 28, OPR made a second interim release of 1,127 pages of records to Conklin responsive to this request.  On July 26, OPR sent the final release of records for PR-433, which included 1,256 pages of responsive records, along with an exemption log.  OPR then considered this request closed.

*D. Fourth Request: PR-2019-00602*

On August 13, 2019, Orheim requested the PRA records previously requested by Favard in PR-920 and PR-342.  OPR created a new file number, PR-2019-00602 (PR-602), to reflect Orheim's request to receive the records previously requested by Favard.  Two days later, Escobar transmitted 1,196 pages responsive to PR-920 to Orheim.

On September 18, 2019, SoM sent OPR a tenth installment of 10,003 pages of resident and fellow personnel files.  On October 9, 2019, Ng was informed that records should now be submitted under PR-602.

In the fall of 2019, SoM experienced a backlog created by a number of very large records requests that encompassed an excess of 180 gigabytes of data and about 3.6 million pages to review.  Because Ng was scheduled for a pre-planned leave between October 28, 2019 and March 4, 2020, SoM hired part-time help to assist with the backlog.  During Ng's leave, SoM sent to OPR an eleventh installment of 73,387 pages on November 6 and 115,984 pages as a twelfth installment on November 14.

On December 13, 2019, Escobar produced an exemption log to Orheim.

Following a show-cause hearing held on January 17, 2020,[7] UW hired an outside vendor to assist OPR with document review and exemption logging for the requests.

On February 5, Escobar emailed Orheim producing another exemption log.

In March 2020, the COVID-19 pandemic impacted the records response. Offices closed for cleaning, and significant time was dedicated to transitioning to remote offices and coordinating equipment and work schedules. OPR also had to develop new processes for making records available that would previously have been made available to requesters in person, paper, or on physical repository.

On June 15, 2020, Escobar emailed Orheim regarding what OPR believed at the time to be the final release of records and another exemption log in connection with PR-920.

In July, Ng, prompted by a call about scheduling a meeting to discuss litigation involving Conklin and UW, discovered that the part-time help had not reviewed all the records collected by SoM while she was on leave. She notified her supervisor and OPR and prioritized reviewing the remaining records. Ng sent the remaining records to OPR on July 24.

On August 24, Escobar emailed Orheim regarding reopening the PRA request. After SoM completed its review of those documents, OPR and a third-party vendor reviewed and logged exemptions for these additional documents.

---

[7] The report of proceedings from this hearing is not in the record.

On October 28, 2020, OPR made available its final release of records in connection with PR-920 to Orheim. In addition to the release of records, UW released a 437-page exemption log that identified 7,851 documents encompassing 264,017 pages. OPR considered PR-920 closed.

Procedural History

Trial by affidavit was set for early 2021. The parties agreed to bifurcate the trial between liability and penalty.

In January 2021, Conklin alleged in his trial brief that UW continued to not be responsive and believed UW had not provided all agreements between UW Medical Center (UWMC) and TSDA and/or American Board of Thoracic Surgery. Conklin also argued that UW was judicially estopped from treating fellowship applications as applications for public employment. On March 2, 2021, the court ordered supplemental briefing on these issues. The court heard oral argument on February 16, 2021.

On March 16, UW provided a supplemental declaration from Ng. She explained that UW determined that it had a fellowship match agreement between SoM and TSDA that she had not seen "until a few weeks ago," and provided a copy of a 2016 TSDA fellowship match agreement as an exhibit. She stated that this was not responsive to PR-920 because that request only asked for agreements between UWMC and TSDA, not UW SoM and TSDA. She did not mention whether it would have been responsive to PR-342.

On May 4, UW filed a second supplemental declaration from Ng. She explained that she had requested records responsive to PR-342 from GME in

2018, and GME did provide a fellowship match agreement with TSDA, which she provided to OPR as a responsive record to PR-342. Ng further explained that she "learned" that GME was not in possession of all match agreements between SoM and TSDA, and that Dr. Lester Permut, who was the director of SoM's congenital cardiac surgery fellowship program, had additional match agreements between TSDA and SoM for different years. She did not previously ask Permut for records responsive to PR-342 because she "believed [GME] would be the only source for the agreements." After she learned that Permut was in possession of match agreements, she gathered them and sent them to OPR as additional responsive records to PR-342.

The same day UW filed Ng's second supplemental declaration, Escobar emailed Orheim explaining that "[t]he School of Medicine identified additional records responsive to your request [PR-342]." Attached were copies of the 2016 agreement that was an exhibit to Ng's March 16 declaration; signed agreements from 2015 and 2017; partially signed agreement forms from 2015 and 2017; a timeline for the "2015 Match for 2016 Appointment Year"; and a copy of the "Congenital Cardiac Surgery Fellowship Match Rules and Regulations."

Conklin alerted the trial court of the late disclosures and the trial court requested additional briefing.

UW filed a declaration from Permut, who explained,

I recall I was asked for some categories of documents around the time the federal lawsuit was filed, including, among other things, any communications regarding [Conklin]. I was not asked at that time to look for copies of the match agreement with the TSDA. It does not surprise me that the School of Medicine would look elsewhere, such as the GME office, for the TSDA match

17

agreement. I do not believe I am expected to keep copies of the TSDA match agreement. That said, when I was asked to look for copies of it earlier this year I did so and provided what I found.

The record provides no explanation as to when Ng asked Permut to search for the records, when Ng received the records from Permut, or when Ng sent the records to OPR. The record also provides no insight as to the source of the 2016 agreement that was attached to Ng's March 16 declaration.

In September 2021, the trial court issued findings of fact and conclusions of law, and it held UW did not violate the PRA. Conklin appeals.

Washington Coalition for Open Government filed an amicus curiae brief joining Conklin in arguing that UW should be penalized for not allocating enough resources for OPR to respond faster to PRA requests.

DISCUSSION

Standard of Review

Judicial review of agency actions taken or challenged under the PRA shall be de novo. Forbes v. City of Gold Bar, 171 Wn. App. 857, 863, 288 P.3d 384 (2012) (quoting RCW 42.56.550(3)). An appellate court reviews a trial court's PRA determination de novo "where the record consists only of affidavits, memoranda of law, and other documentary evidence" because it then "stands in the same position as the trial court." Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252, 884 P.2d 592 (1994).

Exemptions and Judicial Estoppel

Conklin contends that UW violated the PRA when it withheld fellowship applications because they are exempt employment applications. We disagree.

The PRA provides an exemption for "[a]ll applications for public employment other than for vacancies in elective office, including the names of applicants, resumes, and other related materials submitted with respect to an applicant." RCW 42.56.250(2). This exemption exists "to protect relevant privacy rights" which, in the legislature's judgment, "outweigh the PRA's broad policy in favor of disclosing public records." Resident Action Couns. v. Seattle Hous. Auth., 177 Wn.2d 417, 432, 327 P.3d 600 (2013).

UW submitted a declaration from Cindy Hamra, who is the assistant dean of operations and administration for SoM's GME. Hamra explained that residents and fellows in SoM's residencies and fellowships are paid public employees of UW, and they receive salaries and benefits. The fellows receive training in medical specialties as part of their employment.

Conklin argues the fellowship participants are not public employees because part of their funding is through federal funding—but this only bolsters the fact that they are public employees. We affirm the trial court's ruling that the fellowship applications were properly withheld under RCW 42.56.250(2).

Conklin next appears to contend that UW is judicially estopped from claiming the fellowship applications are exempt because UW in the federal lawsuit treated "fellowship positions as mere applications for training." Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007).

UW argued in the federal lawsuit that Conklin's claim under RCW 70.41.235 failed because it was a hospital-regulation statute and did not apply to the fellowship, which UW called a "postgraduate training program." Characterizing the fellowship as a "postgraduate training program," for purposes of arguing RCW 70.41.235 did not apply, does not equate to claiming fellowship positions are not public employment positions. Because UW did not take inconsistent positions between the federal and state cases, we need not consider Conklin's judicial estoppel claim.

Reasonable Time Estimates

Conklin contends that UW did not provide reasonable estimates for its responses. We disagree.

The PRA directs agencies to handle requests in a way that "prevent[s] excessive interference with other essential functions of the agency." RCW 42.56.100. The PRA does not require agencies to provide requesters a detailed explanation for their time estimates. See Ockerman v. King County. Dep't of Dev. and Env't. Servs., 102 Wn. App. 212, 217-18, 6 P.3d 1214 (2000). The PRA only requires an agency to provide a "'reasonable' estimate, not a precise or exact estimate, recognizing that agencies may need more time than initially anticipated to locate the requested records." Andrews v. Wash. State Patrol, 183 Wn. App. 644, 652, 334 P.3d 94 (2014).

The PRA does not bind an agency to its original estimate; an agency is permitted additional time to locate and provide records. Hikel v. City of Lynnwood, 197 Wn. App. 366, 373, 389 P.3d 677 (2016); Forbes, 171 Wn. App.

at 863.  "[W]hether an estimate is reasonable necessarily must be based on a forward-looking evaluation at the time of the estimate, not on a backward-looking evaluation after the fact."  Freedom Found. v. Dep't of Soc. & Health Servs., 9 Wn. App. 2d 654, 667, 445 P.3d 971 (2019).  "The burden of proof shall be on the agency to show that the estimate it provided is reasonable."  RCW 42.56.550(2).

Conklin appears to argue that "UW's time estimates were not reasonable" as a matter of law based simply on the total time it took UW to produce documents.

Conklin's reliance on various cases for reasonable response times is not helpful as he ignores the context in which the courts addressed those response times.  Conklin cites Wade's Eastside Gun Shop, Inc. v. Dep't of Lab. & Indus., 185 Wn.2d 270, 289, 372 P.3d 97 (2016); Rufin v. City of Seattle, 199 Wn. App. 348, 351, 398 P.3d 1237 (2017); Hikel, 197 Wn. App. at 373.

None of these cases declared as a matter of law that a number of days to respond to a request without considering context sets a threshold of reasonable time estimates for release.  See Wade, 185 Wn.2d at 289 (holding an agency's response time unreasonable when it took 232 days to fully respond to a PRA request when no exemptions applied); see also Rufin, 199 Wn. App. at 358 (holding that the city responded diligently when it took 65 days to respond to a PRA request when the person managing the response placed the request in the queue along with other requests received at the time and was working on a number of other requests including one which was very complex); Hikel, 197 Wn.

App. at 373 (holding that the city violated the PRA by not providing an estimate of the time it would take to respond within five days of the records request).

Conklin also cites to average shorter response times UW executed with other public records requests, however, the record also included examples where UW took more than a year to release its first set of documents.[8] These examples do not reveal what the case-by-case circumstances were for each request. We do not know if the records had to be obtained from multiple sources or whether those sources also provided essential functions to UW, and we do not know if the records required significant redaction or creation of exemption logs.

We conclude that, based on this record, the estimates UW provided were reasonable. Escobar described PR-920 as one of the broadest requests she had ever managed. UW kept Favard, Conklin, and Orheim apprised of extensions throughout the entire process of responding to their PRA requests. UW first updated its estimate after Ng informed OPR that some documents responsive to his requests would be located in a third-party system, and Escobar sent the second estimate after Ng informed her that SoM had collected a significant quantity of additional records needing review. Though a majority of the records included exempted records, UW was still required to review each in order to properly comply with RCW 42.56.210(3) in documenting the exemptions. RCW 42.56.210(3) provides, "Agency responses refusing, in whole or in part,

---

[8] Conklin claims that "the average time UW took to complete a PRA request in 2017 and 2018 was 51 and 63 days, respectively." However, the record also shows that UW took 565 days to release a first set of records for request PR-2017-00371 that was submitted on April 2, 2017 when UW received 15,519 pages to review as of the time of the report. UW took 780 days to release records for request PR-2017-00453 when UW received 1,780 pages.

inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." While these records did not require line by line redactions, the pure number of records that were exempt still required laborious creation of hundreds of pages of exemption logs. Conklin cites to no authority to support his argument that as a matter of law the estimates given were not reasonable.

Next, Conklin, in his reply brief, substantively argued for the first time that RCW 42.56.100, which mandates that agencies "shall provide for the fullest assistance to inquirers and the most timely possible action on requests for information," should be read to address whether an agency appropriately budgets in a manner that allows for reasonable response times.

Amicus joins in this argument advocating for penalties to "wake-up" UW to fulfill its duties under the PRA. Amicus cites Zink v. City of Mesa, 140 Wn. App. 328, 337, 166 P.3d 738 (2007), and Conklin cites Rental Hous. Ass'n v. City of Des Moines, 165 Wn.2d 525, 535, 199 P.3d 393 (2009) for the proposition that "[a]dministrative inconvenience or difficulty does not excuse strict compliance with the PRA." Both Conklin and amicus read this language out of context. Rental Hous. Ass'n cited Zink for this proposition. Rental Hous. Ass'n, 165 Wn.2d at 535. Zink cited Hearst Corp. v. Hoppe, 90 Wn.2d 123, 131, 580 P.2d 246 (1978) for this proposition. Zink, 140 Wn. App. at 337. The Hearst court addressed the question, "What effect does administrative inconvenience or difficulty have upon the disclosure requirements of the act?" Hearst, 90 Wn.2d at

23

131. The court answered this question in response to an argument that "the cost and excessive disruption to the department of assessments clearly outweighs the public benefit of disclosing limited factual material from the folios, particularly when such material is readily available elsewhere in the department." Id. The court rejected this argument, holding that "[t]he fact that the material may be available in other records is not a reason stated in the act for failure to disclose." Id. at 132. While we know of no case that limits what can be considered in determining whether a given estimate is reasonable, neither Hearst nor Zink held that agencies violate the PRA when they do not adjust their budget or staffing to accommodate an overwhelming public records request while actively responding to multiple requests.

Our holding does not foreclose the possibility that there may be a circumstance where an agency's staffing decisions as they relate to its ability to timely respond to PRA requests may factor into a determination of an unreasonable estimate of response time. However, because Conklin did not raise this argument until his reply brief, we decline to address it. Generally, a court will not review an issue raised and argued for the first time in a reply brief. RAP 10.3(c).

<u>Prompt Production of Responsive Records</u>

Conklin purports that it was unreasonable for UW to delay 307 days before providing its first installment of records in response to Conklin's first records request, PR-920, and for it to delay its second installment by another 282 days. While 307 days does constitute a long wait, the amount of days is not

24

necessarily determinative. The correct inquiry is whether UW responded with reasonable thoroughness and diligence in response to the request. Freedom Found., 9 Wn. App. 2d at 673.

An agency must respond promptly to a public records request. RCW 42.56.520(1); Rufin, 199 Wn. App. at 359. The PRA requires agencies to provide the "'fullest assistance'" and the "'most timely possible action on requests for information.'" Freedom Found., 9 Wn. App. 2d at 673 (internal quotation marks omitted) (quoting Andrews, 183 Wn. App. at 651)); RCW 42.56.100. "In determining whether an agency acted promptly in producing responsive records, we examine whether the agency's response was thorough and diligent. Whether the agency responded with reasonable thoroughness and diligence is a fact-specific inquiry." Freedom Found., 9 Wn. App. 2d at 673 (citations omitted).

Conklin argues that OPR gathered thousands of pages of records where "they sat for many months, stretching into years, merely awaiting review for possible PRA exemptions" and that "[s]ome responsive records sat collected but unreviewed for as long as 470 days in UW's OPR."

Escobar of OPR asserted that PR-920 was one of the broadest and most complex PRA requests she had ever encountered. She received "tens of thousands" of documents from SoM that she had to review and from which she had to create large exemption logs because the majority of documents contained public employment applications. PR-920 was not the only request she worked on at the time—she had to balance working on that request with other PRA

requests. Escobar explained, "I manage many public records requests at a time and split my time between them."

Conklin cites Wade to show that UW's delays in production were "unreasonable as a matter of fact and law." However, that was not the holding in Wade, where the court held that exemptions did not apply to withheld records, and, thus, the delay of release was unreasonable. Id. at 286. The Wade court held that determinations of unreasonable delay are based on the facts of each individual case. Id. at 283. Conklin's reliance on timeframes that are out of context from other requests is not helpful.

Conklin also cited to Cantu v. Yakima Sch. Dist. No. 7, 23 Wn. App. 2d. 57, 514 P.3d 661(2022) to support his position. In Cantu, Division Three of this court rejected the school district's argument that it was busy simultaneously responding to numerous large public records requests even if it was not making significant progress on Cantu's request. Id. at 94. Division Three cited Zink for the proposition that administrative inconvenience or difficulty in producing records does not excuse lack of diligence. Id. (citing Zink, 140 Wn. App. at 337). However, as discussed above, that proposition is the progeny of Hearst, and it did not directly address whether an agency violates the PRA by spending time responding to other PRA requests. More importantly, Division Three observed that despite the school district's claims of working on other PRA requests, it did "not appear that the District was diligently working on any of them." Id. at 96. The facts in Cantu are distinguishable.

Conklin also argues that UW could have logged exemptions "wholesale" instead of individual documents—however, he never asked UW to log exemptions in that manner.  Regardless, RCW 42.56.210(3) requires UW to document exemptions with particularity.

With the exception of PR-342, discussed below, we conclude that, based on this record, UW responded to the requests with reasonable thoroughness and diligence.

<u>Adequate Search</u>

Conklin argues that UW conducted an inadequate search because it did not provide all the TSDA fellowship match agreement records, which were responsive records to PR-342, until May 2021.  We agree.

The main inquiry is not whether responsive documents exist, but whether the search itself was adequate.  Neighborhood All. of Spokane County v. Spokane County, 172 Wn.2d 702, 719-20, 261 P.3d 119 (2011).  The adequacy of a search is judged by a standard of reasonableness; the search must be reasonably calculated to uncover all relevant documents.  Neighborhood All., 172 Wn.2d at 720.

Agencies are required to make more than a perfunctory search and to follow obvious leads as they are uncovered—the search should not be limited to one or more places if there are additional sources for the information requested.  Id. at 720.  The agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.  Id.  However, an

agency is not required to search every possible place a record may conceivably be stored, but only those places where it is reasonably likely to be found.  Id.

> [R]ecords are never exempt from disclosure, only production, so an adequate search is required in order to properly disclose responsive documents. The failure to perform an adequate search precludes an adequate response and production. The PRA treats a failure to properly respond as a denial. Thus, an inadequate search is comparable to a denial because the result is the same, and should be treated similarly in penalty determinations, at least insofar as the requester may be entitled to costs and reasonable attorney fees under RCW 42.56.550(4).

Id. at 721 (citations and quotations omitted).  "State agencies may not resist disclosure of public records until a suit is filed and then avoid paying fees and penalties by disclosing them voluntarily thereafter."  Kitsap County Prosecuting Attorney's Guild v. Kitsap County, 156 Wn. App. 110, 118, 231 P.3d 219 (2010). The burden is on UW to show that it made an adequate search for responsive records.  Neighborhood All., 172 Wn.2d at 725.

Conklin's first request, PR-920, asked for "all agreements between UW Medical Center and the [TSDA] and/or American Board of Thoracic Surgery." Although Conklin argues that the TSDA match agreements should have been provided in response to this first request, the match agreements were between UW SoM and TSDA, not UWMC and TSDA.  By its plain language, the match agreements would not fall under PR-920.

However, Conklin's second request, PR-342, asked for "[a]ny agreement between UW and [ACGME] or *any other organization* that exclusively requires ACGME accredited training of residents and fellows for any reason." (emphasis added).  This request encompassed match agreements between TSDA and

28

SoM. Even though Conklin's counsel made this request in May 2018, he did not receive several of the responsive documents for this request until May 2021—after UW considered the request closed in November 2020 and after oral argument at trial had already occurred in February 2021.

It is undisputed that the records provided in the May 4, 2021 email were responsive to PR-342. UW contends that it was reasonable to originally only search GME for such records "when [GME] was the ordinary custodian of these records." This claim is not supported in the record. UW only cites Ng's and Permut's declaration that they each believed GME was the record-holder for such agreements. Neither Ng nor Permut explain the basis for their conclusory beliefs. Ironically, despite UW claiming GME as the known record-holder for such agreements, GME only produced a single match agreement in response to PR-342.

UW also relies on model rule WAC 44-14-04003(10), which states "not everyone in an agency needs to be asked if there is no reason to believe he or she has responsive records," and asking only those custodians "selected as most likely to have responsive records is usually sufficient." Although the model rules are advisory only and nonbinding, our Supreme Court has repeatedly cited to the rules when interpreting provisions of the PRA. Kilduff v. San Juan County., 194 Wn.2d 859, 872-73, 453 P.3d 719 (2019).

UW argues there would be no reason to expect other "versions of the agreement not held by the GME would be found in a physician's personal files." First, the records were not different "versions" of the same agreement. These

are similar types of agreements but completely different records as well as other records associated with the agreements. Second, Permut was not simply a physician among many who happened to have copies in his personal files—Permut was the director of SoM's congenital cardiac surgery fellowship program. And at the time PR-342 was submitted, GME had already previously alerted Ng that it only had partial fellowship files, that there was no central records system, and that fellowship applications could potentially be with departments that oversee the particular residence and fellowship programs. Ng did reach out to individual departments as to PR-920. But she apparently failed to do the same for PR-342, despite the fact GME only produced a single fellowship match agreement for a program that existed for more than one year.

Based on this record, we reverse the trial court and conclude that UW did not meet its burden to establish it conducted an adequate search for responsive records as to PR-342 and, thus, violated the PRA.

<u>Daily Penalties, Attorney Fees, and Costs</u>

Conklin requests attorney fees as the prevailing party on appeal under RAP 18.1(a).

The relevant PRA provision provides the following:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4).

A showing of bad faith is not required. <u>Kitsap County Prosecuting Attorney's Guild</u>, 156 Wn. App. at 118. State agencies may not resist disclosure of public records until a suit is filed and then avoid paying fees and penalties by disclosing them voluntarily thereafter. <u>Id.</u> Subsequent events do not affect the wrongfulness of the agency's initial withholding of records if the records were wrongfully withheld at the time. <u>Id.</u> at 119.

Because we conclude Conklin is the prevailing party as to PR-342, we grant Conklin's request for attorney fees and costs relating to that request. Because the trial court did not find a PRA violation, it did not consider attorney fees below or proceed with the penalty phase of trial. We remand to the trial court to proceed with the penalty phase of trial and determination of the amount of attorney fees and costs for both appeal and below consistent with this opinion.

<u>In Camera Viewing</u>

Conklin argues that the trial court abused its discretion by not viewing some exempted documents in camera.

Conklin asked the trial court to review in camera redacted emails UW produced arguing that its federal litigation counsel was advising or strategizing with UW on how to stall in responding to the PRA requests, which was in bad faith. The trial court concluded that Conklin's PRA requests were irrelevant to his claims in the federal lawsuit, that the pendency of that lawsuit provided no incentive for UW to strategically delay its responses to the PRA requests, and that his insinuation that UW "likely coordinated" with its counsel to strategically

delay responding to Conklin's PRA requests to hamper Conklin's federal lawsuit was irrelevant to the PRA claims in this case. The court thus concluded there was no need to conduct an in camera review of UW's written communications with its counsel.

An appellate court "reviews the trial court's decision on whether or not to conduct an in camera review for abuse of discretion." Forbes, 171 Wn. App. at 867.

When courts decide whether in camera review is needed to evaluate applicability of an exemption, they consider: "(1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) bad faith on the part of the agency, (4) disputes concerning the contents of the documents, (5) whether the agency requests an in camera inspection, and (6) the strong public interest in disclosure." Overlake Fund v. City of Bellevue, 60 Wn. App. 787, 797, 810 P.2d 507 (1991) (emphasis omitted). Conklin does not provide any substantive argument regarding these factors and instead asks us to remand for reconsideration by the trial court. UW concedes that when there is an underlying PRA violation, then the timeliness of the response to records can be considered in the penalty phase.

Because we hold that UW violated the PRA, we also remand to the trial court for it to reconsider Conklin's request for an in camera review of exempted documents.

CONCLUSION

We reverse the trial court and hold that UW violated the PRA by not conducting an adequate search and not acting with thoroughness and diligence in responding to PR-342. We otherwise affirm the trial court in denying Conklin's PRA claims as to the other requests. We award attorney fees and costs to Conklin as to PR-342 on appeal and remand for the trial court to determine the amount of attorney fees and costs on appeal and below, and to proceed with the penalty phase of trial as well as reconsider Conklin's request for an in camera review.

Coburn, J.

WE CONCUR:

Smith, A.C.J.

Dwyer, J.